**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| KEITH LOWE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>STAKE CENTER LOCATING, LLC<br><br>Defendant. | Case No. 3:25-cv-02902-BS<br><br>JUDGE BRANTLEY STARR<br><br>JURY DEMANDED |

# FIRST AMENDED SECTION 216(B)/CLASS ACTION COMPLAINT

## I. INTRODUCTION

1. This is an action brought by Keith Lowe ("Named Plaintiff"), on behalf of himself and all others similarly situated against Stake Center Locating, LLC ("Defendant" or "Stake").

2. Named Plaintiff brings his federal claims against Defendant in order to recover compensation, liquidated damages, attorneys' fees and costs, and other equitable relief pursuant to the Fair Labor Standard Act of 1939 ("FLSA"), as amended 29 U.S.C. § 201 *et seq*. Named Plaintiff seeks Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to inform other similarly situated employees of their rights under the FLSA.

3. Named Plaintiff and those similarly situated (hereafter, "Putative Plaintiffs") are current and former employees of Defendant who did not receive one and a half (1 ½) times their regular rate for all hours worked over forty (40) in a workweek.

4. Under the FLSA, Defendant was required to pay for all hours Named Plaintiff and the Putative Plaintiffs worked and pay them 150% of their regular rate for all hours worked over forty (40) in a workweek. By willfully failing to compensate Named Plaintiff and the Putative

Plaintiffs who performed pre-shift, meal break, and post-shift work, Defendant willfully violated the FLSA.

5. Named Plaintiff filed his original Complaint on October 24, 2025. (ECF No. 1).

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over Named Plaintiff's claims because they are brought pursuant to the FLSA, 29 U.S.C. § 216(b), and because they raise a federal question pursuant to 28 U.S.C. § 1331.

8. Venue in the Northern District of Texas is proper, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to the claims herein occurred within this judicial district.

## III. THE PARTIES

9. Keith Lowe ("Named Plaintiff") is an adult resident of Greenville, Texas residing at 380 Village Court, Lot 622, Greenville, Texas 75401. Named Plaintiff was employed by Defendant as an hourly non-exempt Fiber Locator Technician - 4 ("Hourly Utility Locator") from approximately April 2025 through June 2025. His consent form was filed on October 24, 2025. (ECF No. 1-1).

10. The Putative Plaintiffs are all non-exempt employees employed by Defendant within three (3) years preceding the commencement of this action who were not paid overtime at a rate of 150% of their respective regular rates for all hours worked over forty (40) in a workweek.

11. Defendant Stake Center Locating, LLC is a foreign limited liability company registered to do business in the state of Texas. Defendant was previously served and has since appeared beginning on October 30, 2025.

## IV. FACTUAL ALLEGATIONS

12. During all times material to this Complaint, Defendant was an employer, as that term is defined in 29 U.S.C. § 203(d).

13. During all times material to this Complaint, Defendant employed Named Plaintiff and the Putative Plaintiffs within the meaning of the 29 U.S.C. §203(g).

14. During all times material to this Complaint, Defendant was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or has had employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 per year (exclusive of excise taxes at the retail level).

15. During all times material to this Complaint, Named Plaintiff and the Putative Plaintiffs were Defendant's hourly non-exempt employees and have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-07.

16. During all times material to this Complaint, Defendant hired and continued to employ Named Plaintiff and the Putative Plaintiffs hourly non-exempt employees.

17. During all times material to this Complaint, Named Plaintiff and the Putative Plaintiffs were classified as non-exempt and paid at an hourly rate, and thus were entitled to be paid at least 150% of their regular rate for all hours worked over forty (40) in a workweek.

18. Defendant is a utility locating company[1] that provides "complete coverage in all 48 contiguous states," including Texas.[2]

19. Defendant is the third largest locating company in the United States.[3]

20. During all times material to this Complaint, Named Plaintiff and the Putative Plaintiffs regularly worked beyond forty (40) hours in a workweek.

21. As a Locator, Named Plaintiff's job was to locate underground utilities; troubleshoot; mark the ground using paint and flags; document utility damage, if a Lead Fiber Locator Technician and Area Manager were unavailable; and promote damage prevention.[4]

22. A Lead's job was to locate underground utilities; troubleshoot; mark the ground using paint and flats; review and close open tickets without first visiting the work site; liaise with contractors and clients; document damage to utility lines, if an Area Manager is unavailable; and promote damage prevention.

23. Utility Locators and Lead Utility Locators will be collectively referred to as "Hourly Utility Locators."

24. During all times material to this Complaint, Named Plaintiff and the Putative Plaintiffs have been employed by Defendant as Utility Locators, with their primary job duties being to locate utilities underground, mark the ground using paint and flags, and document any damage.

---

[1] *Stake Center*, https://www.stakecenter.com/ (last visited Sept. 17, 2025).
[2] *Service Areas*, https://www.stakecenter.com/service-areas/ (last visited Oct. 8, 2025).
[3] *See* Complaint at 2, *Wolfe v. Stake Center Locating*, No. 230402591, Ct. Com. Pl., Phila. Cnty., Apr. 25, 2023.
[4] *Locate Technician – Dallas, TX*, stakecenterlocating.com, https://stakecenterlocating.hrmdirect.com/employment/job-opening.php?req=2768027&req_loc=29417&&cust_sort1=247313&#job (last accessed Oct. 23, 2025)

25. During all times material to this Complaint, Defendant recorded Named Plaintiff and the Putative Plaintiffs' hours worked using the software system UtiliSphere.

26. During all times material to this Complaint, Defendant closely monitored the work of Named Plaintiff and the Putative Plaintiffs to balance productivity verses cost. To accomplish this, Defendant assigned and tracked work assignments through a software program known as UtiliSphere. Work assignments were referred to as "tickets." A ticket tracked the location of the work site, the type of work that needed to be performed, and the number of "members" (utility providers) associated with each work site.

27. As part of their employment, Defendant's Utility Locators are required to service a certain number of members per hour ("MPH"). Each Utility Locator's productivity is tracked using a "budget" and each Utility Locator's target budget varies depending on their assigned work location and Defendant's needs. Each Utility Locator receives regular e-mails that track their MPH and explain how it relates to their target budget. The goal of this e-mail is to encourage each Utility Locator to meet or exceed their budget.

28. During all times material to this Complaint, Named Plaintiff and the Putative Plaintiffs could be assigned to one of two shifts during their workday: Day Shift or the On Call Shift. The assigned shifts varied and were not exclusive—Named Plaintiff and the Putative Plaintiffs typically worked at least one of each shift during their employment.

***On Call Shift***

29. Defendant scheduled Named Plaintiff and the Putative Plaintiffs to be available to work from 5:00 p.m. until 7:00 a.m. seven days a week when they were scheduled for the On Call Shift. Although Named Plaintiff and the Putative Plaintiffs were required to be available for work from 5:00 p.m. until 7:00 a.m., pursuant to Defendant's companywide policy, they were not on-the-clock.

30. During the On Call Shift, Defendant's companywide policy required Named Plaintiff and the Putative Plaintiffs to keep their work phone on and with them. If Named Plaintiff and the Putative Plaintiffs received a call on their work phone, Defendant required them to answer the automated call and complete the prompts to accept the work assignment. Then, Defendant required Named Plaintiff and the Putative Plaintiffs to turn on their work computer; log into UtiliSphere; sync UtiliSphere; find the ticket at issue; review the ticket to identify the problem, and the site location; and accept the ticket—all while off-the-clock.

31. Once the Named Plaintiff and the Putative Plaintiffs accepted the ticket, they would load into their work vehicle, clock in, and drive to the site to address the issue.

32. Defendant's companywide policy required Named Plaintiff and the Putative Plaintiffs to visit every site even if, based on their knowledge and experience, Named Plaintiff and the Putative Plaintiffs could resolve the issue from home.

33. Defendant's companywide policy required Named Plaintiff and the Putative Plaintiffs to respond to emergency tickets within two (2) hours.

34. Once they received an emergency ticket, Named Plaintiff and the Putative Plaintiffs were required to either accept the ticket, or, if they were already responding to another ticket and thus unavailable, to contact the contractor who initiated the ticket and resolve the conflict.

35. Named Plaintiff and the Putative Plaintiffs would then clock out after they returned home and exited their work vehicle. Pursuant to Defendant's companywide policy Named Plaintiff and the Putative Plaintiffs were then required to continue to monitor their phones and respond to additional calls until their shift ended at 7:00 a.m.

36. Pursuant to Defendant's companywide policy, if the Utility Locator assigned to work the On Call Shift did not answer their phone the call would be automatically transferred to

the next employee in the phone tree. This Utility Locator would be required to respond to the call using the aforementioned procedures.

37. On information and belief, there was at least one occasion during which Named Plaintiff was not assigned to work the On Call Shift but the employee who was assigned did not answer the phone. The call was re-routed to Named Plaintiff's cell phone and he was required by company policy to respond to an emergency ticket located in or near Tyler, Texas. The city of Tyler is located approximately seventy-six (76) miles away from Named Plaintiff's home, which is approximately two hours' drive. Named Plaintiff responded to this emergency ticket using the aforementioned procedures. He was not compensated for the time he spent answering the call or performing the related administrative tasks he is required to perform before leaving his home.

38. Hours worked by a Utility Locator during the On Call Shift were paid at a higher hourly rate of one and a half times (1 ½) the Utility Locator's Day Shift rate.

***Day Shift***
***Unpaid Pre-Shift Work***

39. During all times material to this Complaint, Utility Locators assigned to the Day Shift were scheduled to work from 7:00 a.m. to 3:00 p.m. Monday through Friday.

40. Before going to their first job site, Named Plaintiff and the Putative Plaintiffs logged into UtiliSphere; checked if there were any outstanding Emergency Tickets; ensured that the work ticket they'd reserved was still available; mapped out their route for the day, handled calls with clients or contractors; responded to e-mails; planned their work day; performed a vehicle inspection; loaded supplies and equipment into their work truck; and drove to their first work site.

41. During the drive to the first job site, Named Plaintiff and the Putative Plaintiffs would respond to work calls and attempt to resolve remote tickets.

42. Defendant required Named Plaintiff and the Putative Plaintiffs to only clock in after arriving at the first worksite and to arrive at the worksite no later than 7:00 a.m.

43. The time Named Plaintiff and the Putative Plaintiffs spent working before and during their commute to their first worksite had to be performed off-the-clock and unpaid.

***Unpaid Post-Shift Work***

44. Pursuant to Defendant's companywide policy Named Plaintiff and the Putative Plaintiffs were required to keep their work phones on and respond to calls until 5:00 p.m., even though they had typically already finished their last job of the day and clocked out.

45. Pursuant to Defendant's companywide policy Named Plaintiff and the Putative Plaintiffs were required to clock out at their final worksite of the day.

46. On one occasion, Named Plaintiff's supervisor instructed Named Plaintiff and the Putative Plaintiffs in a morning meeting to keep their work phone on 24/7 and instructed them to respond to any calls or messages that came in without clocking in or otherwise tracking their time. This meant that if a call or text message came in, Named Plaintiff and the Putative Plaintiffs were required to respond while off the clock and without pay.

47. The supervisor indicated that he was aware that they would be responding to these communications off the clock and without compensation. However, the supervisor minimized Named Plaintiff and the Putative Plaintiffs' concerns about working off the clock by arguing that these conversations would be short, since a District Manager or Vice President would only be contacting them to ask a quick question.

48. Named Plaintiff and the Putative Plaintiffs obeyed these instructions, responding to any calls or text messages that came in while they were off the clock and without pay.

49. In order to keep up with their workload, Named Plaintiff and the Putative Plaintiffs also had to complete post-shift work, such as answering emails, client calls, unloading supplies from their work vehicle, and a post route vehicle inspection all while off-the-clock and unpaid.

50. Although Defendant knew Named Plaintiff and the Putative Plaintiffs had to complete this work at the end of their shift, and could only complete it after returning home, it was Defendant's companywide policy to not permit Named Plaintiff and the Putative Plaintiffs to remain clocked in for this work time.

***Unpaid Meal Breaks***

51. Pursuant to Defendant's companywide policy, Named Plaintiff and the Putative Plaintiffs were required to clock out for thirty (30) minutes for a meal break each day, regardless of whether they actually received an undisturbed thirty (30) minute break each day.

52. Due to Defendant's strict MPH requirements, Named Plaintiff and the Putative Plaintiffs were required to work continuously throughout their workday in order to meet their ticket quota.

53. Failure to meet their MPH requirements could result in the Named Plaintiff and the Putative Plaintiffs being disciplined, which could include termination.

54. Although Named Plaintiff and the Putative Plaintiffs could not take an undisturbed thirty (30) minute break and meet their MPH requirements, Defendants continued to require Named Plaintiff and the Putative Plaintiffs to clock out for thirty (30) minutes each day.

55. Should Named Plaintiff and the Putative Plaintiffs fail to record a thirty (30) minute meal break each workday, they could also be disciplined.

56. After being hired, Named Plaintiff did not take a thirty (30) minute meal break due to his busy shift and, therefore, did not record a meal break in his time records. This was common practice with Named Plaintiff and the Putative Plaintiffs. Their supervisor was in the habit of

checking their timecards to ensure that they were taking their lunch breaks. When too many Utility Locators failed to record a meal break in their time records, their direct supervisor would send team-wide e-mails reminding them to record taking a thirty (30) minute meal break each day. If they did not record a meal break each day, the supervisor threatened to write the offending Utility Locators up.

57. After receiving these e-mails, Named Plaintiff continued to work without taking his thirty (30) minute meal break each day but, he made sure to clock out for thirty (30) minutes every day while screening tickets to avoid the threatened discipline.

58. The effect of Defendant's policies are such that the only way to not be disciplined is to work throughout each shift without stopping—in order to meet the MPH requirements—thus Named Plaintiff and the Putative Plaintiffs' would work "off the clock" and not be paid—in order to avoid discipline for not recording one.

59. During all times material to this Complaint and upon information and belief, Defendant was aware that Named Plaintiff and the Putative Plaintiffs often worked approximately thirty (30) minutes before and after their scheduled shifts and permitted this to occur.

60. During all times material to this Complaint, Defendant did not have a formal process or mechanism to for Named Plaintiff and the Putative Plaintiffs to report time worked outside of when they were permitted to clock in pursuant to Defendant's companywide policies; however, Defendant did record the work performed off-the-clock on the UtiliSphere program and by tracking the driving time.

***Other Off the Clock Work***

61. During all times material to this Complaint, the Defendant's aforementioned company-wide policies effectively prohibited Named Plaintiff and the Putative Plaintiffs from receiving compensation for the time they spent performing other work-related tasks.

62. Defendant maintained a companywide policy requiring Named Plaintiff and the Putative Plaintiffs to attend training for approximately one (1) to two (2) weeks after they started working for the company. Named Plaintiff attended this training. He was not compensated for the time he spent commuting from his home community in Greenville, Texas to Defendant's training center, which is located in Irving, Texas. This drive is approximately one (1) hour and fifteen (15) minutes long without traffic.

63. Additionally, Named Plaintiff and the Putative Plaintiffs would have to schedule appointments to perform routine maintenance—such as oil changes or other standard maintenance—on their company-issued vehicles in the evenings or on the weekends.

64. If Defendant's work vehicle experienced a mechanical emergency, Named Plaintiff and the Putative Plaintiff were forced to clock out in the middle of their workday to address the problem.

65. For example, on one occasion Named Plaintiff's company-issued vehicle had a flat tire while he was parked at a worksite. After Named Plaintiff completed the necessary work on his assigned ticket, he was forced to clock out and wait for roadside assistance to fix his vehicle. He also was forced to drop off the tire for repairs and pick it up while off the clock.

66. It was Defendant's companywide policy not to pay Named Plaintiff and the Putative Plaintiffs for these examples of off the clock work.

## V. COURT SUPERVISED NOTICE PURSUANT TO 29 USC § 216(b) ALLEGING FLSA VIOLATIONS

67. Named Plaintiff re-alleges, and incorporates by reference, the allegations set forth in the preceding paragraphs.

68. Named Plaintiff brings his claims individually and as part of a collective action under the FLSA, 29 U.S.C. § 216(b), and as a class action under Fed. R. Civ. P. 23, on behalf of

current and former Hourly Utility Locators who worked in Texas. These collective action claims are for overtime compensation, liquidated damages or interest, and attorneys' fees and costs under the FLSA, 29 U.S.C. §§ 207, 216(b).

69. Named Plaintiff requests that the Court issue Court Supervised Notice to the following group of current and former employees ("Employees Entitled to Notice") defined as:

> **All current and former Hourly Utility Locators who worked for Stake Center Locating, LLC in Texas, at any time within the three (3) years preceding the commencement of this action through the present.**

70. Named Plaintiff reserves the right to amend and refine the definition of the Employees Entitled to Notice they seek to have the Court serve notice based upon further investigation and discovery.

71. The precise size and identity of the proposed Employees Entitled to Notice should be ascertainable from the business records, tax records, and/or employee and personnel records of Defendant.

72. Court Supervised Notice to the Employees Entitled to Notice pursuant to 29 U.S.C. § 216(b) is appropriate because there exists at least a strong likelihood that they are similarly situated to the Named Plaintiff.

73. Sending Court Supervised Notice pursuant to 29 U.S.C. § 216(b) to the Employees Entitled to Notice is appropriate because they have been subjected to single companywide policies and common business practices referenced in the paragraphs above, and the success of their claims depends upon the resolution of common issues of law and fact, including *inter alia*, whether Defendant satisfied the FLSA's requirements for paying them at a rate not less than one and one-half (1 ½) their regular rate of pay for all hours worked in excess of forty (40) hours each workweek.

74. Named Plaintiff and the Employees Entitled to Notice, having willfully been not paid their entitled compensation for work they performed pursuant to the common policies described herein, are "similarly situated" as that term is defined in 29 U.S.C. § 216(b) and the associated decisional law.

75. The Named Plaintiff and the Employees Entitled to Notice have been similarly affected by the violations of Defendant in workweeks during the relevant time period, which amounts to a single decision, policy, or plan to willfully avoid paying all earned FLSA compliant wages.

76. Named Plaintiff seeks to have the Court send supervised notice pursuant to 29 U.S.C. § 216(b), as defined above, to the proposed group of similarly situated current and former employees, i.e., Employees Entitled to Notice.

77. Named Plaintiff is similarly situated to the Employees Entitled to Notice and will prosecute this action vigorously on their behalf.

78. Named Plaintiff intends to send notice to all the Employees Entitled to Notice pursuant to Section 216(b) of the FLSA. The names and addresses of the Employees Entitled to Notice are available from Defendant's records. For the purpose of notice and other purposes related to this action, their names, addresses, email addresses, and phone numbers are readily available from Defendant. Notice can be provided by means permissible under the FLSA.

79. Named Plaintiff and the Employees Entitled to Notice have been similarly damaged by Defendant's willful refusal to pay minimum wages for all hours worked, including failing to pay 150% of Named Plaintiff's and the Employees Entitled to Notice's regular rate for all hours worked beyond forty (40) in a workweek.

80. As a result of Defendant's FLSA violations, Named Plaintiff and the Employees Entitled to Notice are entitled to damages, including, but not limited to, unpaid wages, liquidated damages, costs, and attorneys' fees.

81. Any alleged defenses Defendant may raise will be common to the Named Plaintiff and the Employees Entitled to Notice.

## VI. CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE FAIR LABOR STANDARDS ACT

82. Named Plaintiff re-alleges, and incorporates by reference, the allegations set forth in the preceding paragraphs.

83. During the time period beginning approximately three (3) years preceding the commencement of this action to the present, Defendant was an employer of Named Plaintiff and Employees Entitled to Notice within the meaning of 29 U.S.C. § 203(d).

84. During the time period from approximately three (3) years preceding the commencement of this action to the present, Named Plaintiff and the Employees Entitled to Notice were employed by Defendant within the meaning of 29 U.S.C. § 203(e)(1).

85. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant employed Named Plaintiff and the Employees Entitled to Notice within the meaning of 29 U.S.C. § 203(g).

86. During the time period from approximately three (3) years preceding the commencement of this action to the present, Defendant was an employer subject to the FLSA.

87. During all times material to this Complaint, Named Plaintiff and the Employees Entitled to Notice have not been exempt from receiving overtime benefits under the FLSA because,

*inter alia*, they were not "executive," "administrative," or "professional" employees, as those terms are defined under the FLSA. 29 C.F.R. §§ 541.0, *et seq*.

88. At all times material to this Complaint, Defendant regularly employed Named Plaintiff and the Employees Entitled to Notice to work more than forty (40) hours in a workweek.

89. Defendant violated federal law because it knew or should have known that Named Plaintiff and the Employees Entitled to Notice should have been paid overtime at a rate not less than time and one-half their regular rate of pay for all hours worked over forty (40) in a workweek, including work performed off-the-clock.

90. Defendant, as described above, violated the FLSA, 29 U.S.C. § 207, by failing to pay Named Plaintiff and the Employees Entitled to Notice at the appropriate overtime rate for all hours worked in excess of forty (40) per workweek.

91. Named Plaintiff and the Employees Entitled to Notice should have been paid 150% of their regular rate for all hours worked beyond forty (40) in a workweek during the three years from the filing date of the Complaint or when they join this lawsuit.

92. Defendant willfully violated and continues to willfully violate the FLSA, by having engaged and continuing to engage in conduct, which demonstrates a willful and/or reckless disregard for the provisions of the FLSA.

93. Named Plaintiff and the Employees Entitled to Notice are entitled to unpaid overtime and other compensation, liquidated damages, interest and attorneys' fees, and all other remedies available as compensation for Defendant's violations of FLSA, by which the Named Plaintiff and the Employees Entitled to Notice have suffered and continue to suffer damages.

## VII. PRAYER FOR RELIEF

WHEREFORE, Named Plaintiff, on behalf of himself and the Putative Plaintiffs, prays that this Court enter the following relief:

A. For an Order sending Court Supervised Notice to the FLSA and Texas Employees Entitled to Notice as defined herein and requiring Defendant to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

B. In the event the Defendant seeks to have discovery on the issues of whether the FLSA Employees Entitled to Notice are similarly situated to the Named Plaintiff, that the Court issue an order tolling the FLSA statute of limitation for the FLSA Employees Entitled to Notice as of the filing of this Complaint;

C. Designating Named Plaintiff as the representatives for the FLSA Employees Entitled to Notice and designating counsel of record as Class Counsel;

D. Issuing proper notice to the FLSA Employees Entitled to Notice at Defendant's expense;

E. Unpaid wages and an equal amount as liquidated damages pursuant to the FLSA and the supporting regulations for the Named Plaintiff and the FLSA Employees Entitled to Notice;

F. A declaratory judgment that the practice complained of herein is unlawful under the FLSA;

G. Awarding the cost of this action, including reasonable attorneys' fees and any such further relief as the Court may deem just, proper, and equitable pursuant to the FLSA;

H. Awarding pre-judgment and post-judgment interest;

I. Any other relief to which the Named Plaintiff and Employees Entitled to Notice may be entitled.

## VIII. JURY DEMAND

Plaintiff requests a trial by jury on all their claims.

Date: December 11, 2025

Respectfully submitted,

By: */s/ Clif Alexander*
**Clif Alexander** Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson** Texas Bar No. 24045189
austin@a2xlaw.com
**Carter T. Hastings** Texas Bar No. 24101879
carter@a2xlaw.com
**ANDERSON ALEXANDER, PLLC**
101 N. Shoreline Blvd, Suite 610
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

**BARKAN MEIZLISH DEROSE COX, LLP**

*/s/ Robert E. DeRose*
Robert E. DeRose (OH Bar No. 0055214)
Nickole K. Iula (OH Bar. No. 0099895)
Anna R. Caplan (OH Bar No. 0104562)
(application *pro hac vice* forthcoming)
4200 Regent Street, Suite 210
Columbus, OH 43219
Phone: (614) 221-4221
Facsimile: (614) 744-2300
Email: bderose@barkanmeizlish.com
niula@barkanmeizlish.com
acaplan@barkanmeizlish.com

*Attorneys for Plaintiffs*